IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PAM HUBER                                                      PLAINTIFF

v.                        Case No. 04-2145

WAL-MART STORES, INC.                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action against her current employer contending that the Defendant discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq. and the Arkansas Civil Rights Act of 1993. (Doc. 1). Specifically, the Plaintiff contends that the Defendant refused to provide her with a "reasonable accommodation" which would have been a transfer to an equivalent vacant position for which she was qualified, i.e., a router position. The Plaintiff further alleges that the transfer to her current position was not the equivalent of her previous position, as required under the ADA, as the pay is below that of the previous position. Additionally, the Plaintiff contends that the Defendant's alleged defense, the existence of a legitimate, non-discriminatory policy-to always hire the best qualified applicant-is not valid. The Defendant asserts that its policy to always hire the best qualified person renders unreasonable Plaintiff's requested accommodation, i.e., transfer, as the transfer violates its policy. Furthermore, the Defendant contends that the Plaintiff's reassignment to her current maintenance position was an adequate "reasonable

accommodation" under the ADA. Currently before the Court is the Defendant's Renewed Motion for Summary Judgment (Doc. 33) and the Plaintiff's Motion for Summary Judgment (Doc. 35). In support of their motions, the parties have filed a Joint Statement of Stipulated Facts. (Doc. 31).

## I.  BACKGROUND

Except as noted, the following facts are not disputed. The Plaintiff worked for the Defendant as a dry grocery Order Filler at the Distribution Center in Clarksville, Arkansas. She earned $13.00 per hour, including a $0.50 per hour shift differential. While in this position, the Plaintiff sustained a permanent injury to her right arm and hand. Both parties stipulate that the Plaintiff has a "disability" as defined by the ADA. The Plaintiff requested a reasonable accommodation. Because her injury prevented her from being able to perform the essential functions of the Order Filler position, the Plaintiff requested a reassignment to a vacant, equivalent position. At the time of the request, there was an open Router position at the facility where she worked. Both parties stipulate that the Router position was, at the time, a vacant, equivalent position under the ADA.

Pursuant to the Distribution Center's policy under its Associate Job Transfer Program of hiring the most qualified applicant for the job, the Defendant did not immediately transfer the Plaintiff into the Router position. Instead, the Defendant

2

**AO72A**
**(Rev. 8/82)**

required the Plaintiff to compete with other applicants, to include non-disabled applicants. Ultimately, the position was awarded to a non-disabled employee. The Defendant denied the Plaintiff the position solely on the basis that she was not considered the most qualified candidate. Both parties agree that the Plaintiff was not the most qualified applicant for the position, and that the person placed in the Router position was the most qualified applicant.

When the Defendant could not locate any other vacant, equivalent positions in the Distribution Center, it looked to another facility. The other facility had an opening for a Maintenance Associate at a pay rate of $6.20 per hour. The Plaintiff was able to perform the essential functions of the job with or without reasonable accommodation. The Plaintiff was offered and accepted the position. The Plaintiff continues in this position at a pay rate of $7.97 per hour.

The parties stipulate that the Plaintiff's back-pay and compensatory damages total $28,000, and she is willing to accept reinstatement or a pay increase in lieu of front pay. They also stipulate her attorney fees and costs would be capped at a maximum of $50,000.00.

The Defendant's position is that the ADA does not require employers, when it has an established policy of placing the most qualified person in a position, to give preferential treatment to disabled employees. The Plaintiff disagrees with this analysis and

3

contends the ADA required the Defendant to transfer her to the Router position, as the position was vacant, and able to be performed by her with or without a reasonable accommodation. The Parties stipulate that the Plaintiff was qualified for the position and the position would not have been a promotion.

The parties agree that the dispositive question in this case is the resolution of a question of law: Must an employer give the reasonable accommodation of reassignment , i.e., preferential treatment to a disabled employee by placing that employee in a vacant position, even though the disabled employee may not be the best qualified for the position? (Doc. 31.)

## II. DISCUSSION

In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case and on which it will bear the burden of proof at trial, then the defendant is entitled to judgment as a matter of law and all other facts are

4

**AO72A
(Rev. 8/82)**

rendered immaterial. *See Thelma D. By Delores A. v. Bd. of Educ.*, 934 F.2d 929, 932 (8th Cir. 1991).

The ADA prohibits covered employers from discriminating against individuals on the basis of their disabilities. *See* 42 U.S.C. § 12112(a). Specifically, it prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The Plaintiff contends that the Defendant failed or refused to accommodate her disability and therefore a modified burden-shifting analysis is applied. *See Fenney v. Dakota, Minnesota & Eastern Railroad Co.*, 327 F.3d 707 (8th Cir. 2003)(citations omitted). Under this standard, Plaintiff "at all times retains the burden of persuading the trier of fact that [s]he has been the victim of illegal discrimination due to h[er] disability." *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108 (8th Cir. 1995). However, "once the plaintiff makes 'a facial showing that reasonable accommodation is possible, 'the burden of production shifts to the employer to show that it is unable to accommodate the employee." Thus, the Plaintiff must first make a showing that she has an ADA disability and that she has suffered adverse employment action. *See Fenney*, 327 F.3d at 712.

Under the ADA and its regulations, "discrimination occurs if 'a covered entity [does] not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" *Peebles v. Potter*, 543 F.3d 761, 766 (8th Cir. 2004) (citing 29 C.F.R. 1630.9(a) (2003)) (additional cite omitted) (alterations in original). The issue before the Court is whether the Defendant took adverse action against the Plaintiff because of her disability, i.e., failed to reassign her to a vacant, equivalent position, and instead, reassigned her to a vacant position with less pay.

Currently, there is a circuit split as to whether an employer's policy to hire/transfer the best qualified applicant "trumps" a qualified employee's request to be reassigned as a reasonable accommodation under the ADA. The Tenth Circuit Court and D.C. Circuit Court espouse the view that forcing a qualified, disabled employee to compete with others in order to be provided a reassignment as a reasonable accommodation for his disability violates the ADA. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (en banc); *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998). The other view, i.e., finding an employer can decline to reassign a qualified employee and instead award the vacant position to a more qualified applicant without

running afoul of the ADA, is articulated in *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir. 2000).

The Defendant urges the Court to follow the latter view, that it was not required to reassign Plaintiff to the Router position, an equivalent position, when Plaintiff was qualified for the position but not the best qualified. Defendant states that to do so would have violated its legitimate, nondiscriminatory policy of hiring the most qualified candidate.

The plaintiff in *Humiston-Keeling, Inc.* requested a reasonable accommodation of her disability in the form of reassignment to one of several vacant positions for which she was qualified. The defendant failed to reassign the plaintiff to any of the positions, and instead awarded the positions to persons more qualified. The parties agreed that the defendant had a consistently implemented policy of awarding vacant jobs to the best qualified applicant instead of the first qualified applicant. The Seventh Circuit Court of Appeals agreed with the defendant, holding that "[the reassignment provision makes clear that the employer must . . . consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory." *Id.* at 1028. The Court clearly stated that an employer's "policy of giving the job to the best applicant

7

is legitimate and nondiscriminatory." *Id.*

The *Humiston-Keeling* Court explained that requiring employers to hire inferior persons, even ones that are minimally qualified, because they are members of a protected group would amount to "affirmative action with a vengeance" and "goes well beyond enabling the disabled applicant to compete in the workplace, or requiring the employer to rectify a situation (such as lack of wheelchair access) that is of his own doing." *Id.* at 1028-29 (citation omitted).

The Defendant correctly observes that the Eighth Circuit Court of Appeals cited to a Seventh Circuit case for guidance regarding a related issue. In *Cravens v. Blue Cross*, the Eighth Circuit was faced with the issue of what was required of an employer to adequately engage into an interactive process with an employee seeking a reasonable accommodation. 214 F.3d 1011 (8th Cir. 2000). The *Cravens* Court cited a Seventh Circuit case in holding that "the employer is generally not required to transfer a disabled employee if such a reassignment would violate 'a legitimate, nondiscriminatory policy of the employer.'" *Id.* at 1020 (quoting *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 679 (7th Cir. 1988). However, the *Cravens* Court also cited to several different circuit courts within the *Cravens* opinion. *See, e.g., id.* at 1018-19 (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1167 (10th Cir. 1999 (en banc) ("The ADA plainly states that re-assignment may

8

be required to reasonably accommodate a worker with a disability."); *Willis v. Conopco*, 108 F.3d 282, 284 (11th Cir. 1997) ("Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified.")). This Court cannot place more importance on one cite versus another cite contained in dicta, specifically when the citations were not essential to the holding in *Cravens*.

The United States Supreme Court has yet to resolve the circuit split of whether an employer is obligated under the ADA to reassign a disabled employee to a vacant position which she is qualified, even if the employer has a policy of hiring/transferring the most qualified applicant. In *US Airways, Inc. v. Barnett*, the Supreme Court held that an employer is not required to reassign a disabled person if such a reassignment would conflict with seniority rules. 535 U.S. 391 (2002). However, the Court rejected the creation of a *per se* rule, instead, it held that ordinarily a seniority system will trump a reassignment as a reasonable accommodation. The Court said, however, a plaintiff will be permitted to present evidence of special circumstances that would make reasonable an exception to the seniority rule. *Id.* at 1524-25.

An employer's policy to hire/transfer the best qualified person is distinguishable from an employer's seniority rules. The *US Airways* Court listed benefits of a typical seniority system to show that to make exceptions to such a system would be generally

9

unreasonable. *Id.* at 1524. Those benefits are:

    \* It creates and fulfills "employee expectations of fair, uniform treatment;

    \* It "include[s] an element of due process, limiting unfairness in personnel decisions; and

    \* It "encourage[s] employees to invest in the employing company, accepting less than their value to the firm early in their careers in return for greater benefits in later years.

*Id.* (internal quotes omitted) (citations omitted). The Court gave examples of when an exception to a seniority system may be reasonable, i.e., when the employer retains the right to change the system and frequently does so, or when the system already contains exceptions. *Id.* at 1525.

The Supreme Court ruled that while it is generally unreasonable to require an employer to depart from a seniority policy, it did not rule that it is generally unreasonable to require an employer to depart from a legitimate, non-discriminatory policy. "[T]he fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach." *Id.* at 1521. Comparing a unilateral seniority system with a collective bargaining seniority system is a completely different endeavor than comparing a "best qualified" transfer policy with a collective bargaining seniority system.

The Defendant asserts that the ADA is not a mandatory

10

preference act.[1]  However, the *US Airways* Court dismissed an identical argument, stating "[t]he Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the *same* workplace opportunities that those without disabilities automatically enjoy.  By definition any special "accommodation" requires the employer to treat an employee with a disability differently, i.e., preferentially.  *Id.* at 1521. "The simple fact that an accommodation would provide a 'preference' – in the sense that it would permit the worker with a disability to violate a rule that others must obey – cannot, *in and of itself*, automatically show that the accommodation is not "reasonable.  As a result, we reject the position taken by [defendant] and J[ustice] S[calia] to the contrary."  *Id.*

We adopt the reasoning that to require a qualified disabled employee, who is requesting a transfer to an equivalent, vacant position as a reasonable accommodation when no reasonable accommodation is available for her to remain in her current position, to be forced to compete with other applicants to satisfy the employer's "best qualified" policy clearly violates the ADA. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999); *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998).

---

[1] *See* Brief in Support of Defendant's Renewed Motion for Summary Judgment, p. 5 (Doc. 34).

11

The Tenth Circuit has stated that

> [i]f no reasonable accommodation can keep the employee in his or her existing job, then the reasonable accommodation may require reassignment to a vacant position so long as the employee is qualified for the job and it does not impose an undue burden on the employer. Anything more, such as requiring the reassigned employee to be the best qualified employee for the vacant job, is judicial gloss unwarranted by the statutory language or its legislative history.

*Midland Brake, Inc.*, 180 F.3d at 1169. "There is nothing about a reassignment that transforms it into a lesser accommodation than the others listed [by the ADA as reasonable accommodations], which an employer must not only consider but must also implement if appropriate." *Id.* at 1167. To allow an employer to merely consider a disabled employee's request for reassignment along with other applications for the vacant position would render that portion of the ADA meaningless.

> The employer could merely go through the meaningless process of consideration of a disabled employee's application for reassignment and refuse it in every instance. It would be cold comfort for a disabled employee to know that his or her application was "considered" but that he or she was nevertheless still out of a job - a job to which he or she was otherwise qualified and as to which he or she had a reasonable claim to reassignment. We do not think Congress intended such a hollow promise with it listed reassignment as one of the specific reasonable accommodations in 42 U.S.C. § 12111(9).

*Id.*

The *Aka* Court adopted a similar approach. 156 F.3d 1284. The Court focused on the word "reassign."

12

> An employee who on his own initiative applies for and obtains a job elsewhere in the enterprise would not be described as having been "reassigned"; their core word "assign" implies some active effort on the part of the employer. Indeed the ADA's reference to reassignment would be redundant if permission to apply were all it meant; the ADA already prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures."

*Id.* at 1304.

*Aka* also considered congressional intent in order to determine whether reassignment merely places the disabled employee on the same footing as other applicants for the vacant position. *Id.* at 1304 (citing H.R. REP. NO 485(II), 101st Cong., 2d Sess. At 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 345 ("If *an employee*, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker.")) The D.C. Circuit went on to explain that if Congress had intended a disabled employee seeking reassignment to be treated like all other applicants, there would have been no reason for Congress to specify that the job had to be vacant (no bumping required) or that a collective bargaining agreement based on seniority could be considered as a factor in determining whether a requested transfer was reasonable, as there would have been no possibility of bumping or a less senior disabled employee obtaining the vacant position if they were treated as all other applicants.

13

*Id.*

The Tenth Circuit also discussed Congressional intent, pointing out that Congress had supplied sufficient safeguards for the employer, such as requiring the employee be qualified, not requiring a promotion, not requiring the employer create a position, nor requiring the transfer if it would create an undue hardship on the employer. *Midland Brake, Inc.*, 180 F.3d at 1170. Any further limitations would have to come from Congress. *Id.*

There are legitimate, nondiscriminatory policies that would make an employer's reassignment of a disabled employee unreasonable, i.e. seniority policies. *See, e.g., US Airways, Inc.* 535 U.S. 391; *Midland Brake, Inc.*, 180 F.3d 1154. However, there are also legitimate, nondiscriminatory policies that require the employer to create an exception to reasonably accommodate a qualified, disabled employee. These less important policies, "might have to be subordinated to an employer's reassignment obligation under the ADA because to do otherwise would essentially vitiate the employer's express statutory obligation to employ reassignment as a form of reasonable accommodation." *Midland Brake, Inc.*, 180 F.3d at 1176 (Giving the examples of no reassignment or no transfer policies).

The Defendant's best qualified transfer policy is not a policy that rises to the level of seniority policies, as it cannot be said to encourage employees to accept less in early years with the

company in return for greater benefits in later years.  If the Defendant is correct in its position, the ADA will become meaningless as employers can completely avoid the law by adopting the same policy adopted by Wal-Mart.

In addition to showing the request for accommodation was reasonable, the Plaintiff must also show that she suffered an adverse employment action.  "An adverse employment action is one that causes a material change in the terms or conditions of employment."  *Brown v. Lester E. Cox Medical Centers*, 286 F.3d 1040, 1045 (8th Cir. 2002).  "[A] transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits."  *Id.* (citing *Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997)).

The Court now addresses whether the requested reasonable accommodation would create an undue hardship on the Defendant.  It is unnecessary to evaluate whether the requested transfer would create an undue hardship on the Defendant, as the Defendant has stated that it is not asserting that such a transfer would have posed an undue hardship on the Defendant.  *See* Brief in Support of Defendant's Renewed Motion for Summary Judgement, p. 8 n.2 (Doc. 32).

The Plaintiff's request to the Router position was reasonable.  The Router position was vacant at the time of the request and the

15

position was equivalent to the Plaintiff's position, which paid $13.00 an hour, including a $0.50 shift differential, at the time she became disabled. The pay for the Router position was $12.50 per hour.[2] Plaintiff's transfer to the Maintenance Associate position amounted to a demotion,[3] as the pay was only $6.20.[4] Therefore, the transfer of the Plaintiff to the janitorial position was an adverse employment action in violation of the ADA.

## III. CONCLUSION

Based on the foregoing, the Court concludes that the Plaintiff has an established "disability" as defined under the ADA. The Plaintiff has shown that the requested accommodation was reasonable and that the accommodation given was an adverse employment action. The Defendant has failed to show that the requested reasonable accommodation would pose an undue hardship or that the given accommodation was to an equivalent position. Therefore, the Court finds the Defendant's Renewed Motion for Summary Judgment should be and hereby is DENIED, and the Plaintiff's Motion for Summary Judgment should be and hereby is GRANTED.

WHEREFORE, before entry of a final judgment in this case, Plaintiff is directed to file a written memorandum and supporting

---

[2] Plaintiff's Statement of Undisputed Facts, para. 6 (Doc. 9).

[3] *See Cravens*, 214 F.3d at 1019 (stating that a lower paying position may be a reasonable accommodation if a comparable position is not available.

[4] *See* Joint Stipulation of Facts, para. 7 (Doc. 31) (The Plaintiff is currently being paid at a rate of $7.97 per hour due to pay increases).

16

documentation regarding the amount of damages before December 20, 2005. The Defendant will have ten days to file its response.

IT IS SO ORDERED AND ADJUDGED this 7th day of December 2005.

                                                                /s/ Robert T. Dawson
                                                                Robert T. Dawson
                                                                United States District Judge

AO72A
(Rev. 8/82)