IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PAM HUBER                                                    PLAINTIFF

v.                              Case No. 04-2145

WAL-MART STORES, INC.                                        DEFENDANT

### ORDER ON ATTORNEYS' FEES AND DAMAGES

There comes on for consideration Plaintiff's Verified Motion
for Attorney's Fees (Doc. 40), and First Supplemental Fee Petition
(Doc. 47), Defendant's Verified Response and Brief to Plaintiff's
Verified Motion for Attorney's Fees (Doc. 45), Plaintiff's Reply to
Wal-Mart's Response to the Fee Petition (Doc. 50), Defendant's
Response to Plaintiff's First Supplemental Fee Petition (Doc. 52),
Plaintiff's Petition to Establish Damages and Receive Reinstatement
(Doc. 42), Defendant's Response to Plaintiff's Petition to Establish
Damages and Receive Reinstatement (Doc. 44), and Plaintiff's Reply
to Wal-Mart's Response to the Damages Motion (Doc. 51).  On December
7, 2005, the Court issued its decision which held Defendant failed
to reasonably accommodate Plaintiff's disability by not reassigning
her to a vacant position for which she was qualified.  (Doc. 39.)
As the prevailing party on her ADA claim, Plaintiff contends she is
entitled to an award of attorneys' fees and costs, as well as
reinstatement, back pay, and pre-judgment interest.

Plaintiff seeks attorney's fees and litigation expenses in the
amount of $20,968.32.  (Docs. 40 and 47.)  Defendant does not object
to Plaintiff receiving some fees and costs, but objects to the

hourly billing rate of lead counsel, the requested hourly rate enhancement, contends there is excessive time for some entries, and that there is no itemization or documentation for some of the costs incurred. (Doc. 45.) Defendant does not object to the $95/per hour rate claimed by Ms. Rebekah Kennedy. (Doc. 45, p.3.)

Plaintiff seeks reinstatement, back pay in the amount of $33,945.60, and pre-judgment interest at the rate of six percent. (Doc. 42.) Defendant objects to reinstatement, contending that it is the only one who can make the decision regarding reinstatement or an increase in pay. (Doc. 44.) Defendant also objects to any award of back pay over the stipulated amount of $28,000, and objects to the award of pre-judgment interest. *Id.*

## I. ATTORNEY'S FEES AND COSTS.

"The Americans with Disabilities Act permits the court to award fees and costs to the prevailing party." *Salitros v. Chrysler Corporation*, 306 F.3d 562, 576 (8th Cir. 2002) (citing 42 U.S.C. § 12205 (1994)). "The stating point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002); *Hensley v. Echkerhart,* 461 U.S. 424, 433 (1983). The district court ... should exclude from this initial fee calculation hours that were not "reasonably expended" including hours that are excessive, redundant, or otherwise unnecessary. *Hensley,* 461 U.S. at 434 (quoting S. Rep.

2

No. 94-1011, p. 6 (1976)).  In determining the amount of attorney's

fees, the court should consider twelve factors:

> (1) the time and labor required, (2) the novelty and
> difficulty of the question, (3) the skill requisite to
> perform the legal services properly, (4) the preclusion of
> other employment due to acceptance of the case, (5) the
> customary fee, (6) whether the fee is fixed or contingent,
> (7) time limitations imposed by the client or the
> circumstances, (8)  the amount involved and the results
> obtained, (9) the experience, reputation and ability of
> the attorneys, (10)  the undesirability of the case, (11)
> the nature and length of the professional relationship
> with the client and (12) awards in similar cases.

*Winter v. Cerro Gordo County Conservation Bd.,* 925 F.2d 1069, 1074

n.8 (8th Cir. 1991) (citing *Hensley,* 461 U.S. at 430).  Defendant

does not object to Plaintiff's request for fees and costs, but

objects to specific charges as well as the requested enhancement

rate.  Additionally, Defendant contends that the $150/per hour rate

claimed by Plaintiff's counsel C. Brian Meadors is excessive.

Plaintiff is seeking attorneys' fees for 47.28 hours for Mr. Meadors

and 88.40 hours for Ms. Kennedy.  (Docs. 40, 47.)

## A. Excessive Billing Rate

Defendant contends that the rate of $150/per hour for Mr.

Meadors is unreasonable.  Defendant relies on the rate paid to its

attorney as a reasonable rate for a person with more experience than

Mr. Meadors.  Defendant's attorney is paid $140/per hour.  However,

Plaintiff counters Defendant's contention by pointing out that Ms.

Madison represents Defendant on a routine basis and that Defendant

is a regular client, which justifies the charging of a lower rate

3

than normal.  Defendant concedes that the regular charge for its attorney would be $160/per hour.  Defendant requests that the Court award attorney fees for Mr. Meadors at the rate of $135/per hour.

Plaintiff contends that Mr. Meadors' experience and the current market dictate that $150/per hour is reasonable, for this is the rate currently paid by Mr. Meadors' regular clients.  One client pays less but provides him with a high volume of legal work.  Plaintiff also points to a 2005 case in Sebastian County Circuit Court where the rate of $150/per hour was awarded to him.  Plaintiff contends that the facts show that the $150/per hour rate is reasonable and comparable to other local attorneys with similar experience.  We agree with Plaintiff and find that $150/per hour is a reasonable rate for Mr. Meadors.

### B. Request for Enhancement

Plaintiff also requests a 30% enhancement to both Mr. Meadors' and Ms. Kennedy's fees, resulting in a fee rate of $195/per hour for Mr. Meadors and $123.50/per hour for Kennedy.  Plaintiff argues the case was taken on a full contingency basis with expenses advanced, and that there will be a substantial delay in payment (the case was initially filed in June 2004).  The Plaintiff contends that ADA cases against large corporations are difficult, and that the hourly rate set by the Court in computing the lodestar should have the effect of encouraging competent counsel to take contingent ADA cases against sophisticated and resourceful defendants like Wal-mart.

4

**AO72A**
**(Rev. 8/82)**

Defendant contends that Plaintiff's reasons for enhancement do not justify the requested enhancement.

Although courts had awarded enhancements to contingency cases in times past, the United States Supreme Court ruled that enhancements based on contingency are "not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee." *Jeffers v. Clinton*, 992 F.2d 826, 830 (8th Cir. 1993) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992)). Plaintiff's contention is similar to the reasoning of the district court in *City of Burlington*. The district court in *City of Burlington* granted the enhancement because "attorneys were retained on a contingent fee basis and that without such enhancement respondents would have faced substantial difficulties in obtaining suitable counsel." *Id.* at 830. That position was rejected by the Supreme Court. *Id.*

Plaintiff contends that enhancement is warranted due to the delay of payment to her attorney. This case was filed in June 2004, less than two years before this decision. Plaintiff cites *Missouri by Jenkins v. Agyei*, 491 U.S. 274, 282 (1989) for support of her contention. However, the Court in *Missouri* found that enhancement was warranted due to the delay (nearly three years)

> coupled with the fact that . . . the attorney's expenses are not deferred pending completion of the litigation, can cause considerable hardship. The present case provides an illustration. During a period of nearly three years, the demands of this case precluded attorney Benson from

5

AO72A
(Rev. 8/82)

accepting other employment. In order to pay his staff and meet other operating expenses, he was obliged to borrow $633,000. As of January 1987, he had paid over $113,000 in interest on this debt, and was continuing to borrow to meet interest payments.

*Id*. at 283 n.6.

The facts in the case do not reflect the extreme financial strain experienced by the attorney in *Missouri*. There has been no showing that Plaintiff's counsel were unable to take additional cases or were forced to take out loans in order to meet expenses. Nor is there any showing that an adjustment is necessary due to a change in the hourly rates over a significant passage of time. *See id.* at 283-84 ("Clearly compensation received several years after the services were rendered - as it frequently is in complex civil rights litigation - is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.").

The Eighth Circuit Court of Appeals considered the issue of enhancing an attorney's fees in a case where there had been a six-year delay. *Cotter v. Bowen*, 879 F.2d 359, 361 (8th Cir. 1989), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002). The Court found that the enhancement was not necessary due to the six-year delay, as "delay is normally compensated for in the 'reasonable hourly rate,' either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Id.* at 365 (citing *Pennsylvania v. Delaware*

6

*Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987)).

Plaintiff has failed to show that the present case was unusually complex or difficult to prepare, nor were the results exceptional. *See Forshee v. Waterloo Industries, Inc.*, 178 F.3d 527, 532 (8th Cir. 1999). Therefore, upon due consideration, Plaintiff's request for an enhancement is DENIED.

### C. Excessive Hours

Plaintiff claims 41.6 hours for Mr. Meadors and 88.4 hours for Ms. Kennedy. Defendant contends that 9.20 hours (8.2 hours for Ms. Kennedy and 1 hour for Mr. Meadors) in preparing a response to Defendant's motion to strike is excessive. Additionally, Defendant contends that the 2.4[1] hours spent by Mr. Meadors and 3.3 hours spent by Ms. Kennedy are both excessive as they were spent on administrative tasks that should have been included in office overhead.

The time spent on the response to Defendant's motion to strike was reasonable, as the motion was denied. Ms. Kennedy took a reduction in her hourly rate ($125 to $95/per hour) because of the need to spend additional time to prepare. The tasks Defendant contends were administrative were tasks reasonably performed by attorneys.

Defendant points out that Plaintiff deducted from the bill the

---

[1]Defendant stated in one place that 1.9 hours by Mr. Meadors was spent on administrative tasks, and then referred to 2.4 hours. (Doc. 45, p. 6-7.) It appears that the 1.9 was a typographical error, as the listed time objected to adds up to 2.4 hours for Mr. Meadors.

7

time for intra-office conferences, but neglected to deduct three intra-office conferences totaling 0.7 hour by Mr. Meadors. Plaintiff contends that the previous deductions were voluntary and declines to make any further deductions. We find the 0.7 hour spent in intra-office conferences reasonable. Plaintiff's request for attorney fees for 47.28 hours for Mr. Meadors and 88.40 hours for Ms. Kennedy is GRANTED, and Defendant's request to have the attorneys' fees reduced by what it contends is excessive time is DENIED.

### D. Unexplained Costs

Defendant contends that Plaintiff failed to provide proper documentation for six of the claimed costs, totaling $483.13:

1. A Federal Express fee on January 5, 2005 for $19.85;

2. A Federal Express fee on April 21, 2005 for $17.39;

3. An unexplained charge for "inv. 23614; File no: 76124" on March 24, 2005 for $30.50;

4. PACER copies on May 24, 2005, July 20, 2005, and October 17, 2005 for $2.40;

5. Unexplained copy expenses with no accounting for the number of copies made for a total of $356.25; and

6. Unexplained postage expenses totaling $56.74.

Plaintiff's counsel contends that he is charging as litigation expenses those expenses that would have been charged to any normal client and at the same rates that the normal client would be

8

charged.  (Doc. 41.)  Plaintiff explains that the two federal express charges were likely for delivering discovery to and from the client and obtaining medical records.  The invoice is probably a Docuprint bill for copying medical records.  The PACER charge of $2.40 was spent to ensure that the attorney was aware of all activity and filings.  Plaintiff contends the copy charge of twenty-five cents per page and postage charges were reasonable. Furthermore, Plaintiff contends that Defendant's argument that its lawyers are paid only eight cents a page does not make unreasonableness his twenty-five cents a page charge.  Plaintiff points out that Defendant does not state what its  attorneys charge other clients.  (Doc. 50.)

We find that the costs are adequately explained by Plaintiff and constitute reasonable litigation expenses that should be compensated for by Defendant.  Plaintiff's request to be reimbursed $831.32 in litigation expenses is GRANTED.

**II. DAMAGES.**

### A. Back Pay

The parties filed a Joint Statement in which they stipulated that Plaintiff's "back pay and compensatory damages total $28,000." (Doc. 31, p. 3.)  Plaintiff is now seeking additional back pay for the time since the parties entered into the stipulation on June 28,

9

2005.  It appears that Defendant conceded potential arguments[2] in deciding to forego trial in exchange for Plaintiff limiting the amount of back pay she would be allowed to collect.  *See* Doc. 44, p. 2.

"[S]tipulations by the parties regarding questions of fact are conclusive....  Trial courts are bound by the facts established by the stipulation."  *Gander v. Gander*, 250 F.3d 606, 609 (8ᵗʰ Cir. 2001) (citation omitted) (finding that "[v]alid stipulations are controlling and conclusive and courts must enforce them.").  Plaintiff contends that the stipulation is silent on what would occur if a significant passage of time passed between the stipulated facts and final judgment and thus is open to interpretation.  (Doc. 51, p. 2.)  Plaintiff states that in interpreting the stipulation, the Court can make an equitable decision as to what is fair.  *Id.*  However, Plaintiff fails to provide any authority for her position.

We find that the stipulation clearly states what the back pay and compensatory damages would be should the Court determine the Plaintiff eligible for damages.  There was no unanticipated delay in ruling on this case.  The stipulation clearly states that back pay and compensatory damages would be $28,000, and Plaintiff is awarded that amount, and Plaintiff's request for additional back pay is DENIED.

---

[2] Defendant contends that it conceded the issue of whether Plaintiff was disabled, which it had previously advanced.  (Doc. 44, p. 2.)

10

**B. Reinstatement**

The parties stipulated the Plaintiff would accept either reinstatement or a pay increase in lieu of front pay. (Doc. 31, p. 3.) Plaintiff now seeks reinstatement to the Router position.

"Reinstatement is the preferred remedy for unlawful employment discrimination, and front pay is the disfavored alternative, available only when reinstatement is impracticable or impossible." *Salitros v. Chrysler Corp.*, 306 F.3d 562, 572 (8th Cir. 2002). "Reinstatement should be the norm." *Kucia v. Southeast Arkansas Community Action Corp.*, 284 F.3d 944, 949 (8th Cir. 2002) (reversing the trial court's award of front pay without finding that reinstatement was impracticable or impossible").

Defendant has offered no evidence that reinstatement is impracticable or impossible. Instead, Defendant states that it intends to appeal the Court's ruling to the Eighth Circuit Court of Appeals and it also intends to ask the Court to stay any Order compelling injunctive relief. (Doc. 44, p. 4, n1.) Defendant states that "it would be inefficient to evaluate the practicality of reinstatement today if the reinstatement order could very well be delayed pending appeal." *Id.* Defendant requests that the Court enforce the parties' stipulation. However, the stipulation does not state that Defendant is awarded the choice of reinstatement or a pay increase, as Defendant contends. *See* Doc. 44, p. 4. The stipulation merely states that Plaintiff would be willing to accept

11

either. Reinstatement is proper as there has been no showing of impracticablity or impossibility, and Plaintiff's request for reinstatement is GRANTED.

### C. Pre-judgment Interest

The Court has discretion in whether it awards pre-judgment interest in employment discrimination cases. *See Washington v. Kroger Co.*, 671 F.2d 1072, 1078 (8th Cir. 1982). "Generally, prejudgment interest should be awarded 'unless exceptional circumstances exist making the award of interest inequitable.'" *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1194 (8th Cir. 2000) (quoting *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)). In *Frazier*, the employer failed to cite any authority to support its contention that prejudgment interest cannot be awarded on back pay awards. 200 F.3d at 1194. "To the extent, however, that the damages awarded to the plaintiff represent compensation for lost  wages, 'it is ordinarily an abuse of discretion not to include pre-judgment interest." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2nd Cir. 1998) (citations omitted). How pre-judgment interest is computed is left to the discretion of the district court. *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1139 (D.C. Cir. 1999) (citation omitted). A district court may use the post-judgment standards of 28 U.S.C. § 1961(a), however, it is not compelled to do so. *Taxman v. Board of Education of Township of Piscataway*, 91 F.3d 1547 (3rd Cir. 1996),

12

cert. Dismissed, 118 S. Ct. 595 (1997).

We conclude that the federal rate set by 28 U.S.C. § 1961 is the appropriate rate in this case to apply to an award of pre-judgment interest. Plaintiff seeks pre-judgment interest from July 1, 2005 to December 15, 2005. The weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calender week preceding the week of July 1, 2005[3] was 3.40 percent.[4]

Plaintiff is requesting pre-judgment interest from July 1, 2005 until entry of judgment. (Doc. 42, p. 2.) Plaintiff is awarded pre-judgment interest of 3.40 percent on the $28,000 from July 1, 2005 until entry of judgment. Consequently, Plaintiff will receive interest at a rate of $2.6082 per day for 274 days, for a total amount of pre-judgment interest of $714.65.

## III. CONCLUSION.

Plaintiff's requested attorneys' fee enhancement is DENIED. All other attorneys' fees and litigation expenses requested by Plaintiff are GRANTED. Upon due consideration, Plaintiff is awarded attorneys' fees in the amount of $15,490(Mr. Meadors - 47.28 hours at $150/per hour; Ms. Kennedy - 88.40 hours at $95/per hour) and litigation expenses in the amount of $831.32. Plaintiff is awarded

---

[3] The interest formula set forth in 28 U.S.C. § 1961(a).

[4] Federal Reserve Statistical Release (June 27, 2005), *at* http://www.federalreserve.gov/releases/h15/20050627.

13

reinstatement, $28,000 in back pay and compensatory damages, and $714.65 in pre-judgment interest. Plaintiff's claims for additional back pay and for attorneys' fee enhancement are DENIED. Plaintiff's request for Leave to Conduct Discovery on the attorney's fees issue, and request for a hearing regarding the fee petition are DENIED.[5]

IT IS SO ORDERED THIS 31st day of March 2006.


/S/ Robert T. Dawson
Robert T. Dawson
United States District Judge

---

[5] Petitioner requested these actions in the event Defendant challenges the attorneys' fees. (Doc. 40, p. 6.) Additional information was not necessary to render a decision on the contested issues.

AO72A
(Rev. 8/82)